# UNITED STATES BANKRUPTCY COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: MATTIE MAE FAULKNER | : | Chapter 13 |
| | : | |
| Debtor. | : | Bky. No. 17-10660 ELF |
| | : | |
| MATTIE MAE FAULKNER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| M&T BANK, | : | Adv. No. 17-276 |
| | : | |
| Defendant. | : | |
| | : | |

# M E M O R A N D U M

## I. INTRODUCTION

Mattie Mae Faulkner ("the Debtor") filed this chapter 13 bankruptcy on January 30, 2017.  On March 27, 2017, M&T Bank ("M&T") filed a proof of claim in the amount of $126,523.43, secured by a mortgage on the Debtor's residential real property, 5432 North Fairhill Street, Philadelphia, PA ("the Property").

On September 12, 2017, the Debtor filed a Complaint commencing this adversary proceeding against M&T.  She filed an Amended Complaint on January 2, 2018.

This adversary proceeding is the latest legal skirmish involving the Property, going back to 2002.  Prior to the commencement of this adversary proceeding, the Property was the subject of four (4) mortgage foreclosure lawsuits in state court and three (3) prior bankruptcy cases.

The Amended Complaint raises eight (8) causes of action, invoking a broad range of legal theories, including lack of standing to enforce the secured debt, the <u>Rooker-Feldman</u>

1

doctrine, res judicata, breach of contract, and violation of state and federal consumer protection

statutes.  Some of the claims are purely defensive in nature, designed to reduce or entirely

eliminate M&T's allowed claim; others are affirmative claims for damages.

On January 19, 2018, M&T filed a motion to dismiss ("the Motion") the Amended

Complaint under Fed. R. Bankr. P. 7012 (incorporating Fed. R. Civ. P. 12(b)(6)), asserting that it

has an enforceable right to collect the debt embodied in its secured proof of claim and that the

Debtor's claims lack merit as a matter of law.  The Debtor filed her response to the Motion on

February 19, 2018.

Some of the issues presented by the parties are so clear cut that I wonder why they

bothered to press them.  Others are more problematic, sometimes involving difficult, unsettled

issues of state law.

The task of working through the claims and M&T's asserted grounds for dismissal was

made more arduous because the Debtor's forty (40) page, more than 200 paragraph Amended

Complaint is unnecessarily prolix and filled with legal conclusions interspersed in the statement

of facts and factual allegations interspersed in the statement of claims.  But see Fed. R. Bankr. P.

7008 (incorporating Fed. R. Civ. P. 8) (complaint should contain "a short and plain statement of

the claim showing that the pleader is entitled to relief").

The Motion will be granted in small part and denied in large part.

For the reasons set out below, I will:

- grant the Motion and dismiss Counts II and III, which request that M&T's proof
  of claim be disallowed based on the Rooker-Feldman doctrine and res judicata;

- grant the Motion in part as to Count VI, insofar as the Debtor seeks affirmative
  damages for breach of contract, but I will permit Count VI to go forward insofar
  as it constitutes a defensive objection to M&T's claim, seeking a partial
  disallowance of the claim;

- deny the Motion as to all of the remaining claims:

   Count I –      lack of authority to collect the secured debt;

   Count IV –    partial claim disallowance based on the merger doctrine;

   Count V –      partial claim disallowance based on Pennsylvania Act 6 of
                  1974;

   Count VII –   damages for violation of the Pennsylvania Unfair Trade
                      Practice and Consumer Protection Law; and

   Count VIII – damages for violation of the Federal Fair Debt Collection
                      Practices Act.[1]

## II.  RULE 12(b)(6) LEGAL STANDARDS

The Defendant has moved to dismiss the Amended Complaint for failure to state a claim

under Fed. R. Civ. P. 12(b)(6) (made applicable in adversary proceedings by Fed. R. Bankr. P.

7012).

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the

factual allegations of a complaint, see Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993), and

determines whether the plaintiff is entitled to offer evidence to support the claims, Bell Atlantic

Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007).  A defendant is entitled to dismissal of a

complaint only if the plaintiff has not pled enough facts to state a claim for relief that is plausible

on its face.  Twombly, 550 U.S. at 547.  A claim is facially plausible where the facts set forth in

the complaint allow the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

---

[1]      Count VIII originally included a request to bifurcate M&T's claim into secured and unsecured
components pursuant to 11 U.S.C. §506(a).  This portion of the claim has been withdrawn, so I do not
need to address it.

3

In evaluating the plausibility of the plaintiff's claims, the court conducts a context-specific evaluation of the complaint, drawing from its judicial experience and common sense. See, e.g., Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009); In re Universal Mktg., Inc., 460 B.R. 828, 834 (Bankr. E.D. Pa. 2011) (citing authorities).  In doing so, the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, viewing them in the light most favorable to the plaintiff.  See, e.g., Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181, 188 (3d Cir. 2006).  The court is not bound to accept as true a legal conclusion couched as a factual allegation.  Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555.

In the Motion and the Debtor's response, each party refers to various documents that were docketed in the prior state court and bankruptcy proceedings.  Consequently, Fed. R. Civ. P. 12(d) also is relevant.  It provides:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

In Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014), the Court of Appeals explained that there are situations in which a court may consider matters outside of the factual allegations in the complaint without transforming a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment:

> To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.  However, **an exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment**. The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated [w]here the plaintiff has actual notice ... and has relied upon these documents in framing the complaint.  [W]hat is critical is whether the claims in

the complaint are 'based' on an extrinsic document and not merely whether the
extrinsic document was explicitly cited.

Schmidt, 770 F.3d at 249 (quotations and citations omitted) (emphasis added).

# III. FACTS

The following facts are based on the Amended Complaint and the court records of the

Court of Common Pleas of Philadelphia County and this court.[2]

In 1994, the Property was solely owned by Kevin Faulkner, then the Debtor's spouse.  At

that time, Kevin Faulkner entered into a loan transaction with Provident Mortgage Corporation,

secured by a mortgage ("the Mortgage") on the Property in the amount of $53,900.00.  Kevin

Faulkner was the sole obligor on the associated note ("the Note").  Later, the Mortgage was

assigned to Provident Bank of Maryland.

In 2002, Provident Bank of Maryland filed a mortgage foreclosure action against the

Property, naming Kevin Faulkner as the sole defendant ("the 2002 First Foreclosure").  On

February 24, 2003, Provident Bank of Maryland obtained a default judgment in foreclosure for

$59,830.40 ("the 2003 Judgment").

Soon after the 2003 Judgment was entered, the Debtor finalized her divorce from Kevin

Faulkner.  On June 26, 2003, pursuant to a court order, the Prothonotary of the Court of

Common Pleas executed a deed, transferring the Property to the Debtor.  The deed was recorded

on July 14, 2003.

---

[2]      I may take judicial notice of the docket entries, as well as the documents filed, in both the prior
bankruptcy cases in this court and the state court mortgage foreclosure cases (but not facts stated in the
documents that may be in dispute).  See, e.g., In re Von Kiel, 473 B.R. 78, 86 (Bankr. E.D. Pa. 2012),
aff'd, 497 B.R. 423 (E.D. Pa. 2013) (referring to prior bankruptcy cases) (citing cases); In re Soto, 221
B.R. 343, 347 (Bankr. E.D. Pa. 1998) (referring to state courts within the bankruptcy court's jurisdiction).

On February 27, 2003, (three (3) days after the entry of the 2003 Judgment, but prior to the execution and recording of the Prothonotary's deed to the Property), the Debtor filed her first chapter 13 bankruptcy case, docketed at Bky. No. 03-12945.  In the course of that case, she filed an adversary proceeding against Provident Mortgage Corporation, Adv. No. 04-058, that was settled on terms not apparent on the record.  The Debtor's chapter 13 plan was confirmed on September 9, 2003, but the case was dismissed on September 14, 2004 for failure to make plan payments.

On November 29, 2004, the Debtor filed her second chapter 13 bankruptcy case, docketed as Bky. No. 04-35789.  The Debtor's chapter 13 plan, which was confirmed on June 28, 2005, was designed to cure the default on the Mortgage.  The case was dismissed on motion of the chapter 13 trustee, by order dated December 20, 2005.

On April 11, 2006, the Debtor filed her third chapter 13 bankruptcy case, docketed as Bky. No. 06-11509.  Her chapter 13 plan was confirmed on February 27, 2007.  Again, the plan was designed to cure the default on the Mortgage.  The case was dismissed on April 29, 2008 for failure to make the required plan payments.

On October 16, 2008, Provident Bank filed its second mortgage foreclosure action ("the 2008 Second Foreclosure") against the Debtor and Kevin Faulkner.  On November 11, 2008, while the action was pending, Provident Bank of Maryland assigned the Mortgage to Provident Bank.  On February 17, 2009, the state court entered an order ("the February 2009 Order"), sustaining the Debtor's preliminary objection to the complaint and dismissing the 2008 Second Foreclosure.  The February 2009 Order was entered because the "Complaint [was] not properly verified."

6

Following the dismissal of the 2008 Second Foreclosure, Provident Bank did not file an amended complaint.  Instead, on May 26, 2009, Provident Bank filed a third foreclosure action ("the 2009 Third Foreclosure") against the Debtor and Kevin Faulkner.

On January 27, 2010, the same attorney who was representing Provident Bank in the 2009 Third Foreclosure filed a praecipe on behalf of Provident Bank of Maryland in the 2002 First Foreclosure ("the 2010 Praecipe") that purported to vacate the 2003 Judgment and discontinue the action.

Provident Bank discontinued the 2009 Third Foreclosure on March 19, 2012.

Later in 2012, M&T began its collection efforts on the Note and Mortgage.  M&T filed a fourth foreclosure action against the Debtor and Kevin Faulkner on September 29, 2012 ("the 2012 Fourth Foreclosure").

The Debtor filed an answer and new matter in the 2012 Fourth Foreclosure, raising counterclaims for affirmative damages that are similar to the affirmative counts in the instant Complaint.  The state court dismissed the counterclaims, with prejudice, on July 19, 2016.

During the 2012 Fourth Foreclosure, M&T requested leave of the state court to reissue the pre-foreclosure notices required by Pennsylvania's Loan Interest and Protection Law, Act 6 of 1984, 41 P.S. §§ 101, 403(a) ("Act 6"), alleging that the notices should have been sent to the Debtor.  The state court granted this request on November 15, 2016.  M&T sent the Debtor an Act 6 notice on December 1, 2016.

In 2014, the Property suffered damage that was covered by insurance.  The insurance company sent the Debtor a check for $6,000.00.  The Debtor forwarded this check to the entity claiming to be the holder of the Note and Mortgage.  The Debtor then paid for the repairs herself.

In the Amended Complaint, the Debtor alleges that she has not received credit for the insurance proceeds she paid to the alleged Note holder.

The Debtor filed the instant bankruptcy on January 30, 2017.

On March 27, 2017, M&T filed proof of claim 2-1 ("the Proof of Claim") alleging a debt of $126,523.43 secured by the Property. The Debtor commenced this adversary proceeding on September 12, 2017.

## IV. COUNT I – POSSESSION OF THE NOTE

### A. The Debtor's Count I Theory

In Count I, the Debtor argues that, under applicable nonbankruptcy law, M&T lacks authority to enforce the debt that is secured by the Mortgage.

Specifically, the Debtor asserts that the Proof of Claim lacks evidence that M&T "is in possession of the Note and Mortgage which forms the basis for its proof of claim." (Am. Compl. ¶ 105). In her Memorandum in opposition to the Motion, the Debtor argues that her position is bolstered by M&T's failure to assert that it is the holder of the Note and Mortgage. (Debtor's Mem. at 5).

As explained below, the Motion to dismiss this Count will be denied.[3]

---

[3] In Count I of the Amended Complaint, the Debtor raises another ground for the disallowance of M&T's proof of claim. Beginning with an argument that she revisits in other counts and that will be discussed below – i.e., that the purported vacating of the 2003 Judgment entered in the 2002 First Foreclosure was a nullity, that the Judgment remains in effect and that the underlying mortgage has ceased to exist (having merged into the Judgment) see, e.g., In re Stendardo, 991 F.2d 1089 (3d Cir. 1993) – the Debtor asserts that in the absence of some evidence that Provident Bank of Maryland assigned its rights as judgment creditor to M&T, M&T has no interest in the underlying debt and no right to receive a distribution in the bankruptcy case. (Am. Compl. ¶¶ 108-111). However, as explained below, the Debtor's main theory (i.e., that M&T does not possess the note) will survive M&T's Rule 12(b)(6) motion. so it is unnecessary to consider her second theory.

## B.  Discussion

## 1.

In essence, Count I amounts to an objection to the allowance of M&T's Proof of Claim, a request for relief that ordinarily arises as a contested matter.  Its assertion as part of an adversary proceeding is permitted by the rules of court.  See Fed. R. Bankr. P. 3007(b).

The existence of an allowable claim starts with the requirement that the claimant has a bankruptcy "claim," which is defined as "right to payment" under applicable law.  See 11 U.S.C. §101(5)(A).  The Debtor's objection to M&T's Proof of Claim requires that she establish that the claim is "is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured."  11 U.S.C. §502(b)(1).[4]

---

[4]        The fact that the Debtor's claim objection is being raised in an adversary proceeding warrants consideration of certain procedural differences between claims objections and adversary proceedings.

An objection to a proof of claim typically is handled in a more summary fashion than an adversary proceeding.  The rules do not require a response to an objection, but rather after an objection is filed, a hearing is promptly scheduled.  At the hearing, specialized rules, which have been discussed in a legion of reported decisions, establish a system of "shifting burdens" with respect to the burden of proof.

Simply put, Rule 3001(c) provides that if a claim is based on a writing, the claimant must attach the writing to the proof of claim.  Rule 3001(f) provides that a proof of claim filed "in accordance" with the rules constitutes prima facie evidence of the validity and amount of the claim. In effect, a proof of claim that complies with the rules of court serves as both a pleading and as trial evidence, even in the face of an objection to the claim.  E.g. In re Henry, 546 B.R. 633, 634–35 (Bankr. E.D. Pa. 2016).

If the claimant's proof of claim qualifies for prima facie status under Rule 3001(f), the burden of producing evidence contesting the validity or amount of the claim shifts to the objector. To meet this burden, the objector's evidence must "refute at least one of the allegations that is essential to the claim's legal sufficiency."  In re Allegheny Int'l, Inc., 954 F.2d 167, 173–74 (3d Cir. 1992).  If the objector meets that burden, the ultimate burden of proof remains with the claimant, which may require the claimant to offer additional evidence in support of the validity or amount of the claim.  See, e.g., Henry, 546 B.R. at 634.

Presumably, these burden shifting rules apply at trial in an adversary proceeding.  However, an adversary proceeding allows for an extra layer of pretrial process: a responsive pleading in the form of a motion to dismiss, which challenges the legal sufficiency of the complaint.        *[cont.]*

Here, the Debtor agrees that the source of M&T's asserted right to payment is the Note and that the Note is a negotiable instrument under the Uniform Commercial Code. (Debtor's Mem. at 6 n.1.). The Debtor the attacks M&T's authority to enforce the note.

It is well established that there are three (3) ways in which a party may establish the right to enforce a negotiable instrument:

1. by being its holder (i.e., in possession of the note where the note is payable to the person or is payable to bearer);

2. by being a nonholder in possession, who has the rights of a holder;

3. if the note has been destroyed or is lost or is in the wrongful possession of an unknown person or a person who cannot be found, by establishing that the person was formerly in possession of the note with the right to enforce when the loss of possession occurred (and the loss was not a result of a transfer or lawful seizure).

E.g., In re Walker, , 466 B.R. 271, 280 (Bankr. E.D. Pa. 2012) (citing In re Veal, 450 B.R. 897, 910-13 (B.A.P. 9th Cir. 2011)); In re Kemp, 440 B.R. 624, 630-34 (Bankr. D.N.J. 2010).

In the Amended Complaint, the Debtor alleges that M&T "is neither in possession of the note . . . upon which it bases its claim nor is it the holder of the note . . . with a right to enforce." (Am. Compl. ¶107). This allegation, which I must accept as true at this stage of the adversary proceeding, states a claim for disallowance of M&T's proof of claim.

---

*[cont.]*

In this adversary proceeding, M&T's responsive pleading is a motion to dismiss under Fed. R. Bankr. P. 7012(b) (incorporating Fed. R. Civ. P. 12). As stated earlier, in the Rule 12(b)(6) context, the factual averments in the complaint are accepted as true in deciding a motion to dismiss under Rule 12(b)(6). If, as appears to be the case here, M&T's proof of claim is entitled to prima facie status as to its validity and amount, for Count I to survive the motion to dismiss, the Amended Complaint must allege facts that refute at least one of the allegations essential to the legal sufficiency of M&T's proof of claim.

**2.**

M&T seeks to avoid this outcome by referring to the copy of the Note that it attached to its Proof of Claim and states that the rules of court do not require that a proof of claim include an averment that the claimant has possession of an underlying note. As a result, M&T posits that its Proof of Claim complies with the procedural requirement of Fed. R. Bankr. P. 3001(c) and is prima facie valid pursuant to Fed. R. Bankr. P. 3001(f).

M&T also argues that the allegation that it lacks possession is disproven by the content of the Note it attached to the Proof of Claim. The Note, which is initially payable to Provident Mortgage Corp. t/a Consolidated Mort. Corp., is endorsed by Provident Mortgage Corp. to the order of Provident Bank of Maryland and then endorsed in blank by Provident Bank of Maryland. In addition, M&T avers in the Proof of Claim that it is the successor by merger to Provident Bank of Maryland. Taking into account its attachment of the endorsed-in-blank note and M&T's status as the successor to Provident Bank of Maryland,[5] M&T suggests that it is

---

[5]      While the Debtor argues that M&T's asserted status as a successor by merger to Provident Bank of Maryland is a factual issue that should be determined at a later stage of the proceeding, the publicly-searchable business and trade name databases maintained by the Departments of State of Pennsylvania and Maryland (containing information that is subject to judicial notice) suggest otherwise.

      "Provident Bank of Maryland" was incorporated in Maryland, see Md. Dep't of State ID# D02390003, https://egov.maryland.gov/BusinessExpress/EntitySearch (last visited Sept. 25, 2018) and registered as a Maryland corporation in Pennsylvania, see Pa. Dep't of State Entity #2623509, https://www.corporations.pa.gov/Search/CorpSearch (last visited Sept. 25, 2018). "Provident Bank" is a trade name of Provident Bank of Maryland, registered to Provident Bank of Maryland's use in both Maryland and Pennsylvania. See Md. Dep't of State trade name T00132826; Pa. Dep't of State fictitious name #2900716, https://www.corporations.pa.gov/Search/CorpSearch (last visited Sept. 25, 2018). Thus, Provident Bank of Maryland and Provident Bank appear to be one and the same.

      The Debtor asserts that M&T has not explained its connection with Provident Bank of Maryland. This is directly belied by the Proof of Claim, filed under oath, which includes a document stating that M&T is the successor by merger to Provident Bank of Maryland. In light of my denial of the Motion as to Count I on other grounds, I need not reach the issue at this time.          *[cont.]*

irrefutable that it has possession of and is the holder of the Note (and therefore, that Count I should be dismissed).

While the circumstances strongly suggest that M&T has possession and is the holder of the Note, I am not persuaded that dismissal at the pleading stage is appropriate.

The prima facie status of the Proof of Claim under Fed. R. Bankr. P. 3001(f) cannot be determinative. Indeed, the reason the Debtor filed the adversary proceeding, and Count I in particular, was to overcome the prima facie status of M&T's Proof of Claim. The Debtor has pled facts that, if proven, would do so. At least prior to discovery and summary judgment, the Debtor is entitled to establish that M&T does not possess the Note or have any alternative grounds that support its right to enforce it.

The fact that M&T attached **a copy** of the Note to its proof of claim does not establish that it has actual possession of the **original** instrument. There are many ways a party may obtain a copy of a note without having possession, particularly where there has been prior litigation involving the instrument in which copies of documents were attached to court filings by other entities. Therefore, the copy of the Note attached to M&T's Proof of Claim does not overcome the requirement that I accept as true the Debtor's allegation in the Amended Complaint that M&T does not have possession of the Note.

---

*[cont.]*

If the averment in the Proof of Claim regarding M&T's status as successor by merger is accepted, that fact also would refute one of the Debtor's Count IV arguments, i.e., that the 2003 Judgment (entered in favor of Provident Bank of Maryland) is binding on the parties, but M&T has not shown its right to enforce that judgment (entered in the name of another entity).

Technically, in order to rely on M&T's averments in the Proof of Claim regarding its status as successor by merger over the Debtor's denial, the Motion would have to be treated as a motion for summary judgment with respect to this issue. See Fed. R. Civ. P. 12(d); In re Marchese, 2018 WL 3472823, at *8, 10 (Bankr. E.D. Pa. July 16, 2018). However, I need not further complicate the procedural status of this matter because I can, and will, resolve M&T's request for dismissal of Count IV on other grounds. See Part VII, infra.

**3.**

Analysis of the merits of the motion to dismiss Count I requires one more step.

While the Note is the basis for the debt that is secured by the Mortgage, the Debtor did not sign the Note and has no personal liability on it.  Kevin Faulkner signed the Note when he owned the Property and only later did the Debtor take title.  When she did so, the Property was subject to the Mortgage.

Because the Debtor's property is subject to a mortgage that secures an outstanding liability (i.e., an outstanding right to payment), M&T has a bankruptcy "claim" against the Debtor.  See 11 U.S.C. §102(2) (claim against the debtor "includes claim against property of the debtor"); Johnson v. Home State Bank, 501 U.S. 78, 85-87 (1991).  However, M&T's claim is only allowable if Pennsylvania law permits it to enforce its rights against the Property.

In the end, the allowability of the Proof of Claim turns on the question: may M&T foreclose on the Property under Pennsylvania law?  Because the Debtor has adequately alleged that M&T does not hold and cannot enforce the Note, an allegation that I accept as true for present purposes, the answer is "no."

The Pennsylvania Rules of Civil Procedure contain no explicit requirement that a foreclosure complaint include documentation underlying the right to foreclose.  Pa. R. Civ. P.1147; see also Bank of N.Y. Mellon v. Johnson, 121 A.3d 1056, 1063 (Pa. Super. 2015). Nevertheless, the plaintiff must "plead ownership of the mortgage under Rule 1147, and have the right to make demand upon the note secured by the mortgage."  CitiMortgage, Inc. v. Barbezat, 131 A.3d 65, 68 (Pa. Super. Ct. 2016).  This is so because the right to foreclose on a mortgage follows the right to enforce the associated note.  Dale A. Whitman, What We Have Learned from

13

the Mortgage Crisis About Transferring Mortgage Loans, 49 Real Prop. Tr. & Est. L.J. 1, 51

(2014).

The Debtor adequately pled that M&T does not possess the Note.  If proven, M&T would

not have grounds to obtain a judgment in foreclosure to enforce the liability on the Note.  If

M&T cannot foreclose against the Property, it does not have an allowable non-recourse

bankruptcy claim.

For these reasons, the Debtor has adequately pled that M&T's claim should be

disallowed.


## V. COUNT II -- APPLICATION OF THE ROOKER-FELDMAN DOCTRINE

In Count II, the Debtor seeks disallowance of M&T's claim based on application of the

Rooker-Feldman doctrine.

Earlier this year, I summarized that doctrine as follows:

> The Rooker–Feldman doctrine derives from two (2) Supreme Court cases,
> Rooker v. Fidelity Trust Co., 263 U.S. 413, 415–16, 44 S. Ct. 149, 68 L.Ed. 362
> (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462,
> 476, 103 S. Ct. 1303, 75 L.Ed.2d 206 (1983).

> The doctrine is rooted in the statutory propositions that federal district
> courts are courts of original, not appellate, jurisdiction and that the United States
> Supreme Court is the only federal court possessing jurisdiction to review final
> judgments of a state's highest court. See 28 U.S.C. § 1257(a); Exxon Mobil Corp.
> v. Saudi Basic Indus. Corp., 544 U.S. 280, 284–85, 125 S. Ct. 1517, 161 L.Ed.2d
> 454 (2005). However, Rooker–Feldman is considered a "narrow" doctrine,
> limited to "cases brought by state-court losers complaining of injuries caused by
> state-court judgments rendered before the [federal] court proceedings commenced
> and inviting [federal] court review and rejection of those judgments." Exxon
> Mobil, 544 U.S. at 284, 125 S. Ct. 1517. As stated earlier, when applicable,
> Rooker–Feldman divests a lower federal court of subject matter jurisdiction that
> might otherwise exist.

In <u>Great Western Mining & Mineral Co. v. Fox Rothschild LLP</u>, 615 F.3d 159, 166 (3d Cir. 2010), the Court of Appeals enunciated the following four-part test for determining whether a claim is subject to dismissal under the Rooker–Feldman doctrine:

> (1) the federal plaintiff lost in state court;
>
> (2) the federal plaintiff complains of injuries caused by the state-court judgments;
>
> (3) those judgments were rendered before the federal suit was filed; and,
>
> (4) the federal plaintiff is inviting the federal court to review and reject the state court judgment

<u>In re Zaid</u>, 582 B.R. 370, 375–76 (Bankr. E.D. Pa. 2018).

The Debtor here bases her request for disallowance of the Proof of Claim on the February 2009 Order that dismissed the 2008 Second Foreclosure. Based on that order, she conceptualizes M&T as a state court loser, now coming to federal court as a plaintiff, (through the filing of its proof of claim), requesting that the federal court review and modify the state court judgment.

M&T asserts that Count II lacks merit as a matter of law. I agree. This claim for relief is borderline frivolous and will be dismissed. This is so for three (3) reasons

First, the February 2009 Order, dismissing the state court complaint because it was not properly verified, was not a dismissal of the 2008 Second Foreclosure on the merits.

Second, the assertion of the Proof of Claim against the Debtor is a request for relief based on events that preceded the entry of the state court order. It does not constitute a complaint regarding injuries caused by the state court order, as required by the second prong of the <u>Great Western</u> test.[6]

---

[6]     When the federal plaintiff asserts an injury caused by the defendant and not the state court judgment, <u>Rooker-Feldman</u> is inapplicable. <u>See</u> <u>Great Western</u>, 615 F.3d at 167. A guidepost in drawing that distinction is whether the injury complained of existed prior to the entry of the state court judgment. <u>E.g.</u>, <u>Allen v. DeBello</u>, 861 F.3d 433, 438 (3d Cir. 2017). If the injury caused by the conduct at issue in

Third, in the absence of any indication that the dismissal of a mortgage foreclosure action was intended as a determination that the Note and Mortgage were absolutely invalid and unenforceable, the maximum effect the dismissal could have would be to bar the mortgagee from seeking foreclosure and payment based on the particular default alleged in the complaint.  That is, the dismissal would not bar the mortgagee from filing a subsequent foreclosure action based on default  of the note and mortgage occurring after the dismissal.  E.g., Fairbank's Capital Corp. v. Milligan, 234 F. App'x 21, 23 (3d Cir. 2007) (nonprecedential).  This is so because a "subsequent and separate alleged default created a new and independent right in the mortgagee to accelerate payment on the note in a subsequent foreclosure action."  Id. at 23 (quoting Singleton v. Greymar Assocs., 882 So.2d 1004, 1007 (Fla. 2004)); accord Mortg. Elec. Registration Sys., Inc. v. Dimou, 2014 WL 10965798, at *2 (Pa. Super. Ct. Apr. 28, 2014) (nonprecedential).

In Rooker-Feldman terms, if a subsequent action in state court, based on a subsequent default, is permissible, the same subsequent action in federal court cannot possibly constitute an effort to review and reject the prior state court judgment.

In bankruptcy terms, even if the February 2009 Order dismissed the 2008 Second Foreclosure with prejudice, M&T still has an allowable bankruptcy claim for amounts still due on the Note and Mortgage after the dismissal of the 2008 Second Foreclosure.  Further, the Amended Complaint acknowledges that the Debtor missed several years of monthly instalments after February 2009, which provides grounds for M&T to file a subsequent foreclosure action.

In short, even if the February 2009 Order dismissed the 2008 Second Foreclosure with prejudice, its maximum effect would be to reduce the amount of M&T's Proof of Claim; it

---

the federal proceeding occurred before the entry of the state court judgment, the injury could not have been caused by state proceedings.  In re Razzi, 533 B.R. 469, 476–77 (Bankr. E.D. Pa. 2015).  Here, the injury complained of (i.e., the payment default) existed prior to the entry of the February 2009 Order.

would not require disallowance of the entire Proof of Claim.  Because total disallowance is the

logical result of the application of <u>Rooker-Feldman</u> in the manner requested by the Debtor,

Count II will be dismissed with prejudice.


## VI.  COUNT III: APPLICATION OF THE DOCTRINE OF <u>RES JUDICATA</u> BASED ON THE FEBRUARY 2009 ORDER IN THE 2008 SECOND FORECLOSURE

In Count III, the Debtor advances a similar theory to that in Count II.  Based on the

February 2009 Order dismissing the 2008 Second Foreclosure, the Debtor asserts that the

doctrine of <u>res judicata</u> bars M&T from collecting upon the Mortgage, thereby mandating the

total disallowance of the Proof of Claim.

The doctrine of <u>res judicata</u> "acts as a bar to relitigation of an adjudicated claim between

parties and those in privity with them."  <u>Transamerica Occidental Life Ins. Co. v. Aviation</u>

<u>Office of Am., Inc.</u>, 292 F.3d 384, 392 (3d Cir. 2002) (citing <u>CoreStates Bank, N.A. v. Huls</u>

<u>Am., Inc.</u>, 176 F.3d 187, 194 (3d Cir.1999)).

Count III, like Count II, rests on the premises that the dismissal of the mortgage

foreclosure action was on the merits and with prejudice, forever cutting off a mortgagee's right

to foreclose.  None of these assumptions are true.  M&T may foreclose on any of the post-

dismissal defaults alleged in the complaint and therefore, has a right to payment that is

enforceable against the Property.

Count III will be dismissed with prejudice.

## VII.  COUNT IV: APPLICATION OF THE DOCTRINES OF RES JUDICATA AND MERGER BASED ON THE 2003 JUDGMENT

### A.  The Debtor's Count IV Theory

If the Proof of Claim is not wholly disallowed, the Debtor asserts that the claim should be disallowed in part because M&T is bound by the 2003 Judgment through the doctrine of res judicata and therefore, the calculation of its allowable claim is constrained by Pennsylvania's doctrine of merger.

When a foreclosure judgment is entered, the mortgage contract merges into the judgment. Stendardo, 991 F.2d at 1094–95.  After merger, "the right to collect any pre-judgment amounts which could have been included in the judgment, and the right to collect any post-judgment charges provided for by the note and mortgage are extinguished."  In re Cohen-Harvin, 571 B.R. 672, 675 (Bankr. E.D. Pa. 2017).  Provisions of the mortgage that permit a lender to shift various expenses to the borrower, such as taxes, insurance premiums and attorney's fees, are no longer enforceable prospectively, unless the mortgage provides that they survive the entry of judgment. If the mortgage does not so provide, non-surviving charges arising post-judgment that are claimed in a bankruptcy proof of claim are subject to disallowance upon proper objection.  See, e.g., id. at 680 (disallowing post-judgment charges claimed for taxes, insurance and appraisal).

In order for the merger doctrine to apply, there must be a judgment upon the mortgage. The Debtor points to the 2003 Judgment entered in the 2002 First Foreclosure, alleging that it controls.  She argues that M&T's rights must be determined with the 2003 Judgment as the starting point, and any post-judgment charges that did not survive the merger must be disallowed.  M&T's predecessors purportedly vacated the 2003 Judgment by filing the 2010 Praecipe.  The Debtor contends that the 2010 Praecipe was ineffective and that the 2003 Judgment remains in force and controls the respective rights of the parties.

18

## B.  M&T's Preliminary Arguments

M&T's core contention is that Count IV should be dismissed because the 2003 Judgment no longer exists; it was vacated by the 2010 Praecipe.  Before making that argument, however, M&T offers several preliminary reasons why Count IV should be dismissed that are not dependent on the continuing vitality of the 2003 Judgment.  None of these arguments is persuasive.

### 1.

Initially, M&T disputes the Debtor's right to invoke the doctrine of <u>res judicata</u>.

<u>Res judicata</u>, also referred to as claim preclusion, provides that a final judgment on the merits by a court of competent jurisdiction precludes any future suit between the parties or their privies on the same cause of action. <u>E.g.</u>, <u>Balent v. City of Wilkes-Barre</u>, 669 A.2d 309, 313 (Pa. 1995).

To apply the doctrine, three (3) elements must be present:

(1) a final judgment on the merits in a prior suit;

(2) the same parties or their privies; and

(3) a subsequent suit based on the same cause of action.[7]

---

[7]    In many decisions, the Pennsylvania courts have framed the <u>res judicata</u> elements slightly differently, describing them as involving a final judgment in which there are an "(1) identity of issues; (2) identity in the cause of action; (3) identity of persons and parties to the action; and (4) identity of the capacity of the parties suing or being sued," as compared to the subsequent lawsuit. <u>E.g.</u>, <u>In re Estate of Plance</u>, 175 A.3d 249, 270 (Pa. 2017) (quoting <u>Daley v. A.W. Chesterton, Inc.</u>, 37 A.3d 1175, 1189-90 (Pa. 2012); <u>see also</u> <u>City of Pittsburgh v. Zoning Bd. of Adjustment of City of Pittsburgh</u>, 559 A.2d 896, 901 (Pa. 1989) (stating the four (4) elements slightly differently).

M&T contends that the Debtor may not invoke <u>res judicata</u> because she and M&T are not in privity.  The Note and Mortgage were between Kevin Faulkner and M&T's predecessor in interest.  Further, Kevin Faulkner was the sole named defendant in the 2002 First Foreclosure in which the 2003 Judgment was entered.

M&T is on solid ground at the start of its analysis when it calls privity a "legal conclusion that the relationship between a party and a nonparty is sufficiently close to require the application of <u>res judicata</u>."  (M&T's Mem. at 18)  In other words,

> the concept of "privity" is itself not an analytic tool used in determining whether a party should be bound by the results of prior litigation in which it did not participate. Rather, if "privity" is found to exist, it expresses the conclusion that a nonparty's relationship to the prior litigation is sufficient to justify the application of preclusion doctrines.

<u>In re Mondelblatt</u>, 350 B.R. 1, 8 (Bankr. E.D. Pa. 2006).

M&T then reasons that the Debtor's interest cannot be considered to have been represented in the 2002 Foreclosure because, at the time of that litigation and the entry of the 2003 Judgment, she was neither a borrower, mortgagor nor real owner.

Respectfully, I disagree.

M&T's position is refuted by a case that it itself cites: <u>Latham v. Wells Fargo Bank, N.A.</u>, 896 F.3d 979 (5th Cir. 1990).  <u>Latham</u> states that a non-party is in privity with a party for <u>res judicata</u> purposes if the non-party "has succeeded to the party's interest in property, [thereby being] bound by prior judgments against the party."  896 F.2d at 983; <u>accord Flinn's Estate</u>, 388 A.2d 672, 677 (Pa. 1978) ("An individual is in privity with a party where his relationship to the property in question is 'mutual or successive'").  That is precisely what occurred here.

From June 2003 (when the Debtor obtained title to the Property) to January 2010 (when Provident Bank filed the 2010 Praecipe), the Debtor owned the Property subject to the 2003

Judgment and was bound by that judgment.  If it had chosen to do so, M&T could have executed upon the 2003 Judgment and the Debtor would have been bound by the result of the 2003 Judgment.  See Com., Dep't of Pub. Assistance v. Ward, 108 Pa. Cmwlth. 572, 574 & n.3 (1987) (post-judgment transferees take real property subject to any existing judgments).  Indeed, to take a foreclosed property to sheriff's sale after entry of a judgment in mortgage foreclosure, the judgment creditor must serve the named defendants, as well as the real owner if the real owner was not a named defendant.  See Pa. R. Civ. P. No. 3129.1.  That is, if M&T had sought to execute upon the 2003 Judgment it would have needed to serve the Debtor.  See Bank of Pennsylvania v. G/N Enterprises, Inc., 316 Pa. Super. 367, 372 (1983) ("Pa. R. Civ. P. 3129 provides that no writ of execution to sell real estate shall issue upon a judgment without written notice to the owner or reputed owner of the real estate").  If this requirement did not make the Debtor a "party to the action" for all actions in the foreclosure case that took place after the Property was deeded to her, at a minimum it made her a successor to Kevin Faulkner and placed her in privity with M&T.

Moreover, Kevin Faulkner's interest in the foreclosure litigation was identical to the Debtor's interest, i.e., to protect the Property from acceleration, execution and sale.  The Debtor took the Property subject to the 2003 Judgment, and acquired the same interest that Kevin Faulkner had when he failed to defend in the 2002 First Foreclosure: ownership of the Property subject to the foreclosure judgment, with a desire to avoid execution upon the Mortgage.

Having taken Kevin Faulkner's position with the same interests, the Debtor is sufficiently in privity with M&T to invoke the doctrine of res judicata against M&T.

**2.**

M&T next argues that it was within its rights to institute a second foreclosure upon the

Mortgage, even if the 2003 Judgment was still in effect because there were subsequent defaults.

This, too, is incorrect.

M&T's argument runs afoul of the merger doctrine.  The entry of a foreclosure judgment

fixes the positions of the parties: the mortgage merges into the judgment and no further monthly

installments fall due as long as the judgment remained in effect.  The debt secured by the

mortgage is accelerated and is immediately due and payable in its entirety as set forth in the

judgment.  In short, there is no mortgage that could be in default or give rise to a new cause of

action in mortgage foreclosure.[8]

A post-judgment foreclosure action cannot accomplish anything for a mortgagee that has

received a judgment – the relief sought has already been granted and the contract underlying the

cause of action is not operational.  59 C.J.S. Mortgages §722 (West 2018) ("When a mortgage

has been validly and completely foreclosed, it cannot ordinarily be the subject of further

foreclosures").  After the entry of the 2003 Judgment, M&T was bound by the foreclosure rights

it acquired from the entry of the judgment.

---

[8]        The post-judgment initiation of a new foreclosure action is the converse of the scenario discussed
in Part V, supra where a **dismissal** of an action in mortgage foreclosure may be followed by the filing of a
new foreclosure action based upon a post-dismissal default.  In that context, the mortgage remains extant
and a new cause of action arises when a post-dismissal installment payment is missed.  In the post-
judgment context, the mortgage has been accelerated, has merged into the judgment and no further
installments are due.

**3.**

Finally, citing Pa. R. Civ. P. 1028(a)(6) in support of its position, M&T argues that the

Debtor waived the affirmative defense of <u>res judicata</u> in preliminary objections to the complaints

filed in the 2009 Third Foreclosure and the 2012 Fourth Foreclosure.

Rule 1028(a)(6) provides, in pertinent part:

> Preliminary objections may be filed by any party to any pleading and are limited
> to the following grounds:
>                    .   .   .
>
> (6) pendency of a prior action or agreement for alternative dispute
> resolution;

This argument is without merit for two (2) independent reasons.

First, it is not mandatory that a defendant raise every available defense in a preliminary

objection, rather than in an answer and new matter.  Rule 1028 states that preliminary objections

"may" be raised, not that they must be raised.  As a general proposition,

> Although a defendant who fails to raise all preliminary objections at one time
> waives the right to voice those objections at a preliminary stage, the defendant is
> not barred from raising those complaints at an appropriate point later in an action.
> For example, although a defendant might lose the right to demur to a complaint
> by failing to include a demurrer with other preliminary objections, this does not
> mean that the defendant concedes, for the entire action, that a plaintiff has pleaded
> a cause of action. The legal sufficiency of a plaintiff's case remains an open issue,
> which a defendant may raise in his or her answer  .   .   .   .

3 Goodrich Amram 2d §1028(b):6 (West 2018).

Second, Rule 1028(a)(6) refers to pending matters that are in active litigation (<u>i.e.,</u> not yet

reduced to judgment), <u>see</u> 5 <u>Standard Pennsylvania Practice</u> 2d §25:101 (West 2018), or matters

committed to alternative dispute resolution (such as mandatory arbitration), not to the defense of

<u>res judicata</u> based on a prior, final judgment.  Indeed, the rules explicitly provide that the defense

of <u>res judicata</u> be raised in a new matter as an affirmative defense.  <u>See</u> Pa. R. Civ. P. 1030(a);

23

see also Pa. R. Civ. P. 1032(a) (a party "waives all defenses which are not presented **either by preliminary objection, answer or reply**" except those stated in Rule 1030(b)) (emphasis added).

    I also observe that no final judgments were entered in either of the foreclosure actions cited by M&T.  Thus, under the state court rules, the Debtor could have sought leave to amend her pleading during the pendency of those actions.  See Pa. R. Civ. P. 1033.  Now that the dispute is in the bankruptcy court, in the form of an objection to a proof of claim, I perceive no reason derived from the face of the Amended Complaint or the record of the prior state court foreclosures, why the Debtor should be barred, **as a matter of law** at the Rule 12(b)(6) stage, from asserting this partial defense to the allowance of M&T's claim.


### C.  The "Main Event" – Did the 2010 Praecipe Validly Vacate the 2003 Judgment?

    Having rejected M&T's preliminary arguments, I must resolve the main legal issue presented by the Motion with respect to Count IV.

    The sufficiency of Count IV comes down to an issue which is simply stated but difficult to resolve: may the holder of a default judgment in mortgage foreclosure vacate that judgment by filing a praecipe with the prothonotary?[9]  If so, there is no valid judgment in existence arising from the 2002 First Foreclosure and the legal foundation of Count IV collapses.

    Both sides have marshaled cogent arguments in support of their positions.

    For the reasons that follow, I agree with the Debtor and conclude that the mortgagee's attempt to vacate the default judgment by praecipe was not ineffective.

---

[9]    The praecipe actually filed in the 2002 First Foreclosure asked the prothonotary to "remove" the 2003 Judgment.  There does not appear to be a term of art known as "removal" of a judgment in Pennsylvania practice.  The Debtor has treated the concept of removal as the equivalent of vacating a judgment.  I will do the same.

**1.**

M&T's primary argument, that its unilateral filing of the 2002 Praecipe served to vacate

the 2003 Judgment has some intuitive appeal:

> [s]ince the entry of a default judgment is made by the prothonotary without any
> judicial involvement, it follows that the prothonotary may vacate the judgment
> and discontinue the action also upon praecipe of the plaintiff without any judicial
> involvement.

(M&T Mem. at 21).

M&T supports its core contention by reference to the Pennsylvania Rules of Civil

Procedure, which authorize the entry of a default judgment for a sum certain through the filing of

a praecipe by a plaintiff and the ministerial action of the prothonotary.  See Pa. R. Civ. P.

1141(b) (except as otherwise provided, the procedure in mortgage foreclosure actions is

governed by the rules relating to civil actions); Pa. R. Civ. P. 237.1(a)(2)(ii) (authorizing the

entry of judgment by default); Pa. R. Civ. P. 1037(b)(1) (authorizing the prothonotary to assess

damages for a sum certain upon the filing of a praecipe).

M&T acknowledges the general proposition that a party may not unilaterally alter a

judgment entered after a judicial determination of the rights of the parties.  (M&T Mem. at 21).

M&T suggests, however, that, at least for certain purposes, a default judgment is different than a

judgment entered after a contest: it is entered without any judicial involvement; it is not a

"judicial order;"[10] it may not be appealed unless a petition to open or strike has been denied.[11]

Based on these differences (and the lack of judicial involvement in the entry of the judgment, in

---

[10]      Com., Office of Atty. Gen., Bureau of Consumer Prot. v. Lubisky, 88 A.3d 328, 333 (Pa.
Commw. Ct. 2014).

[11]      Id.; Estate of Considine v. Wachovia Bank, 966 A.2d 1148, 1152 (Pa. Super. Ct. 2009).

particular) M&T impliedly suggests that the default judgment belongs to the plaintiff to do with as it pleases.

M&T also acknowledges that Pennsylvania rules of court include no express authorization for a party to effect vacatur of a default judgment by praecipe, but adds that "there is no procedural rule or case law that prohibits [the] procedure." (Id. at 20).  M&T points to reported decisions that decided other issues but also, without negative commentary, described the procedural history as including the vacatur of a judgment by praecipe.  See Murphy v. Bank of Am., 2016 WL 1020969, at *1 (E.D. Pa. Mar. 14, 2016); Clark v. EMC Mortg. Corp., 2009 WL 229761, at *2 & n.13 (E.D. Pa. Jan. 29, 2009).


**2.**

 The Debtor counters primarily with a textual argument based on the Pennsylvania Rules of Civil Procedure, in particular, Pa. R. Civ. P. 206.1-206.7 and 208.1-208.4.

Rules 206.1-206.7 require that a "petition" be filed for striking or opening a default judgment and set out the procedure to be followed after the petition is filed.  Rules 208.1-208.4, more generally, provide that an application to the court for an order (with certain exceptions, including petitions under Rule 206.1) are requested by filing a "motion" and then set out the procedure to be followed after a motion is filed.  Both sets of rules provide for notice to the opposing party and the opportunity to file a response.  See Pa. R. Civ. P. 206.2, 208.2(a)(4), 208.3(a).

The Debtor's essential argument is that the vacating of a judgment is the modification of a court order and therefore, regardless whether the proper procedure is found in Rules 206.1-206.7 or 208.1-208.4, it cannot be effected by praecipe.

Also, the Debtor emphasizes that, under Pennsylvania law, a default judgment is just as conclusive for res judicata purposes as a judgment entered after contested litigation. See, e.g. Fox v. Gabler, 626 A.2d 1141, 1143 (Pa. 1993); Zimmer v. Zimmer, 326 A.2d 318, 320 (Pa. 1974). [12]

While not fully fleshed out, the Debtor's position appears to be that her textual argument based on the court rules is reinforced by two (2) underlying legal principles: (1) the modification of a judgment without prior notice and opportunity to be heard is inconsistent with fundamental notions of due process that are embodied in the Pennsylvania court rules; [13] and (2) binding the judgment debtor to the terms of a judgment, but allowing a plaintiff to disregard it at its "whim"[14] is inconsistent with the principles of mutuality and finality that are embedded in the doctrine of res judicata.

---

[12]    This particular argument highlights how the parties' positions begin with contrary legal premises. To M&T, a default judgment is not a judicial order while the Debtor contends that a default judgment is a court order, drawing support from the black letter principle that it is just as effective as a judgment entered after a contest.

[13]    Due process considerations come into play when a party seeks relief from a court that impacts the rights of the opposing party.  At first blush, the vacating of a judgment by a plaintiff might not be perceived as (negatively) affecting the rights of the defendant; after all, it removes the judgment. However, in light of the merger doctrine, there are situations in which a defendant would prefer that the plaintiff remain bound by the entered judgment and therefore, might desire the opportunity to oppose a plaintiff's request to vacate a default judgment.  See generally In re Culler, 584 B.R. 518 (Bankr. E.D. Pa. 2018) (reducing mortgagee's proof of claim from $59,280.00 to $51,719.13 based on application of merger doctrine); Chase Home Mortg. Corp. of the Southeast v. Good, 537 A.2d 22, 24 (Pa. Super. Ct. 1988) (payment of record judgment amount precludes subsequent request to reassess damages on the judgment).

[14]    (Debtor's Mem. at 21).

**3.**

 No clear answer to the issue presented by the parties may be found in the Pennsylvania rules of court or case law.  Nevertheless, I find it necessary to decide the issue and predict how the Pennsylvania Supreme Court would rule.[15]

I conclude that vacatur of a default judgment in mortgage foreclosure by praecipe, without the consent of the defendant and without notice and opportunity to be heard, is not authorized by the Pennsylvania Rules of Civil Procedure and is legally ineffective. Consequently, if M&T is the successor by merger to Provident Bank of Maryland, see n.5, supra, it is bound by the 2003 Judgment, the doctrine of merger applies and the Motion to dismiss Count IV must be denied because it states a claim upon which relief can be granted.

At the risk of oversimplification, my conclusion is based on the view that in the absence of textual support in the rules for the practice of vacating default judgments by praecipe, the due process requirements of notice and opportunity to be heard included in the existing court rules, along with the principles of finality and mutuality embedded in the doctrine of res judicata, are the most reliable expressions of Pennsylvania law on the issue.

To be sure, M&T's arguments that there is no statute or rule that explicitly prohibits vacatur-by-praecipe and that there is reason to believe that the procedure historically has been

---

[15]     See, e.g., Klein v. Weidner, 729 F.3d 280, 283 (3d Cir.2013) (citing Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1373 n. 15 (3d Cir.1996)).

Given the uncertainty, it would perhaps be preferable for the bankruptcy court to abstain and permit the state courts to resolve the issue.  See 28 U.S.C. §1334(c)(1).  However, several considerations militate against doing so.  The issue arises in the context of a proceeding objecting to the allowance of a proof of claim.  Resolving whether M&T's claim should be allowed, and if so in what amount, is critical in determining whether the Debtor's chapter 13 plan can be confirmed.  This bankruptcy itself has been pending for more than eighteen (18) months.  Abstention would result in a further delay that would be intolerable in this chapter 13 case.  On balance, I conclude that the better course is for the bankruptcy court to wade into the muddy legal waters.

countenanced have some force.  If a creditor holds a valid and enforceable default judgment obtained by the ministerial act of the prothonotary, it is not obvious why it should be prohibited from giving up the benefits of its judgment  – usually (but not always) to its own detriment – and restarting merits litigation. [16]

Further, there may be a policy reason why a summary process for vacating a default judgment in mortgage foreclosure may be desirable.  For example, if a defendant-mortgagor has cured a default after the entry of a foreclosure judgment but prior to sheriff's sale (a right that many mortgages provide to a mortgagor), or the parties have entered into a forbearance agreement or loan modification after the entry of judgment in which the plaintiff-mortgagor agrees to reinstate the mortgage, it would appear to be in the interest of both the plaintiff-mortgagee and the defendant-mortgagor (as well as the court) to allow the mortgagee to update the public record regarding the status of the parties in the least costly, most efficient means possible: the simple act of filing a praecipe to vacate the judgment and a praecipe to discontinue the foreclosure action.

Nevertheless, while the issue is not free from doubt, I find the counterarguments more persuasive.

---

[16]    If legally effective, a praecipe to vacate a judgment usually diminishes the plaintiff's legal rights, which can only be restored after the defendant is afforded additional process and opportunity to defend against the plaintiff's claims.  This is not an insignificant benefit, as is demonstrated by the facts in this case in which the Debtor vigorously defended the 2009 Third Foreclosure that was pending when M&T filed the 2010 Praecipe as well as the 2012 Fourth Foreclosure.

There is a situation in which it may be theoretically and procedurally possible for a plaintiff to attempt to gain an improper benefit through vacatur-by-praecipe.  Potentially, a plaintiff could vacate an existing foreclosure judgment by praecipe and then promptly re-enter a new default judgment in the same action, but in a higher amount.  However, such a procedure would be an improper attempt to end-run the reassessment of damages, which requires the filing of a motion.  See EMC Mortg., LLC v. Biddle, 114 A.3d 1057, 1072 (Pa. Super. Ct. 2015).

Although the rules of court allow a judgment to be entered by default through the
ministerial act of the prothonotary, once that default judgment has been entered, a court order is
in place that has determined the rights of the parties.  In a sense, once entered, the judgment
entered by the ministerial action of the prothonotary is transformed into something greater than a
docket notation.  This is clear from the preclusive effect given to the default judgment, which is
treated as the final, judicial determination of the rights of the parties – i.e., of both parties.  While
this policy consideration arguably may be somewhat weaker in the default judgment context –
where there has been no real contest between the legal positions of the parties – treating the
default judgment in all respects as if it were entered by a judicial officer is bolstered by the
policy of mutuality and notions of fairness.

In essence, a judgment is not a unilateral right held by the winning party, but a
determination under the control of the court.  This is even true for a default judgment, "which
remains within the control of the court indefinitely and may be opened or vacated at any time
upon proper cause shown."  Simpson v. Allstate Ins. Co., 504 A.2d 335, 337 (Pa. Super. Ct.
1986) (citations omitted).  Under the Pennsylvania Rules of Civil Procedure and related case law,
the standard mechanisms of undoing a judgment – opening and striking – require some court
involvement.[17]  It is difficult to discern why vacating a judgment should be subject to different

---

[17]    "A petition to open a judgment is addressed to the equitable powers of the court and is a
matter of judicial discretion. The court will only exercise this discretion when (1) the petition has been
promptly filed; (2) a meritorious defense can be shown; and (3) the failure to appear can be excused."
Schultz v. Erie Ins. Exch., 505 Pa. 90, 93 (1984).

A petition to strike a default judgment demurs to the record.  If something in the existing
record undercuts the right to that default judgment, it must be stricken.  Linett v. Linett, 434 Pa. 441, 254
A.2d 7, 10 (1969); Com. v. Neighbor's First Fed. Credit Union Check in Amount of $76,389.27, 134 A.3d
149,  156 (Pa. Commw. Ct.), appeal denied, 636 Pa. 679 (2016).  This evaluation of the record is
undertaken by a court, for cause, after a petition served on the other parties.  Pa. R. Civ. P. 2959.

rules.   To the extent that courts have permitted the practice of vacating a judgment to be effected

by praecipe – for example, in the situations I described earlier (i.e., following a cure of the

default giving rise to the judgment or a forbearance or loan modification agreement) – the

vacatur of the judgment without active judicial involvement is, in essence, the product of the

parties' agreement, not the unilateral action of the plaintiff.[18]  Absent consent, the court rules

and related policy concerns strongly suggest that modifying a judgment requires notice, an

opportunity to be heard and some cause for relief if the other party objects.  The court rules could

---

[18]     The two (2) cases cited by M&T deal with vacatur-by-praecipe are consistent, or at least not inconsistent, with the proposition stated in the text.

     In Clark v. EMC Mortg. Corp., 2009 WL 229761 (E.D. Pa. Jan. 29, 2009), the lender obtained a foreclosure judgment.  The borrowers then joined a class action, which ended when class members obtained loan modifications which brought their mortgages current.  The lender then attempted to execute upon the existing foreclosure judgment, and the borrower defended by arguing the loan modification had cured the defaults upon which the foreclosure was based.  The lender eventually recognized the modification and filed a praecipe to vacate the foreclosure judgment.  Id. at *2.  Clark is inapposite here because the modification was, in effect, a settlement between the lender and borrower.  Vacating the judgment was simply another case of vacatur by consent.  The post-judgment loan modification implicitly relied upon the judgment having no further legal effect, and the praecipe carried that out in a way that conformed to the parties' expectations.

     In Murphy v. Bank of Am., N.A., 2016 WL 1020969, at *3 (E.D. Pa. Mar. 14, 2016), the lender obtained a foreclosure default judgment.  The lender then filed a second foreclosure case upon the same mortgage, and only afterwards filed a praecipe to vacate the first judgment.  The borrower sued on similar grounds (consumer protection and Act 6 violation) to those alleged by the Debtor.  The court dismissed most of the borrower's causes of action, but did so on other grounds – lack of damages, statute of limitations – which did not address whether the vacatur was valid.  The court did state that "the judgment was voluntarily vacated and Plaintiff suffered no tangible loss" – but only in the context of dismissing a civil RICO claim because the borrower hadn't paid any money out-of-pocket that could constitute ascertainable damages.  Id. at *7.  The court's assumption that vacatur-by-praecipe was valid is dictum. Additionally, the court's opinion in Murphy does not make it clear whether vacatur-by-praecipe was valid as a matter of law, or merely an adequately-pled fact scenario alleged by the plaintiff and accepted by the court.  See also EMC Mortg., LLC v. Unknown Heirs, Successors, Assigns, & All Persons, Firms or Associations Claiming Right, Title or Interest From or Under Brolley, 2016 WL 3369092, at *1 (Pa. Super. Ct. June 16, 2016) (nonprecedential) (also referring to a prior vacatur of a mortgage foreclosure judgment by praecipe without analyzing the validity of the procedure).

provide for a default judgment to be vacated by a praecipe if, with notice to the defendant, the

plaintiff represents that the defendant consents to the vacatur.  But no such rule presently exists.

## 4.

The principles discussed above suggest that at least two (2) problems exist with the

praecipe procedure used to vacate the 2003 Judgment in this case.

First, while a praecipe to vacate must be served on every other party under Pa. R. Civ. P.

440,[19] the praecipe here was not. The praecipe vacating the 2003 Judgment was served on one

party: Kevin Faulkner, at the Property address.[20]  By 2010, Provident Bank of Maryland, having

filed the 2008 Second Foreclosure and 2009 Third Foreclosure against the Debtor, necessarily

knew that the Debtor lived at the Property and was the real owner.  Yet Provident Bank of

Maryland did not serve her with the 2010 Praecipe.

Second, the purpose of Rule 440 is to give parties the opportunity to be heard if they

oppose whatever the petitioner is requesting.  Vacatur-by-praecipe does not do this.  When

vacatur-by-praecipe is accompanied by a discontinuance, as occurred here, the very case in

which a party might object is closed and ended, imposing an additional procedural hurdle to a

party opposing vacatur.  See generally Duquesne Light Co. v. Rudolph N. Rohn Co., 753 A.2d

---

[19]     Any mechanism for undoing a judgment constitutes "other process" under Pennsylvania's
procedural rules, and requires service of the paper filed to effectuate the action on "every other party to
the action." Pa. R. Civ. P. 440.  The real owner of a mortgaged property is a necessary defendant in a
foreclosure. Pa. R. Civ. P. 1144.  See generally Marra v. Stocker, 615 A.2d 326, 328 (Pa. 1992) (parties
purchasing real estate subject to mortgage are residential mortgage debtors within meaning of Act 6).

[20]     Earlier in the 2002 First Foreclosure, Provident Bank of Maryland asked for – and received – the
ability to serve Kevin Faulkner by special service because he could not be found.

286, 287 (Pa. Super. Ct. 2000) (reversing trial court order opening a consent judgment where

plaintiff was denied opportunity to make an evidentiary record).

In this case, the Debtor had no notice of the vacatur of the 2003 Judgment, no opportunity

to contest it and no judicial officer signed an order vacating the judgment.  In these

circumstances, I conclude that M&T's predecessors in interest did not validly vacate the 2003

Judgment, the Debtor may invoke res judicata to bind M&T to whatever consequences flow from

the effect of its entry and the doctrine of merger. Consequently, the Motion will be denied as to

Count IV.


## VIII.  COUNT V:  CLAIMS FOR VIOLATION OF ACT 6

### A.  Introduction

With respect to "residential mortgages" covered by Act 6, the statute provides that

> Before any residential mortgage lender may accelerate the maturity of any
> residential mortgage obligation, commence any legal action including mortgage
> foreclosure to recover under such obligation, or take possession of any security of
> the residential mortgage debtor for such residential mortgage obligation, such
> person shall give the residential mortgage debtor notice of such intention at least
> thirty days in advance as provided in this section.

41 P.S. §403(a).

41 P.S. §403(c) then prescribes, in detail, the information that must be included in the

notice.[21]

---

[21]      Section 403(c) provides:

> The written notice shall clearly and conspicuously state:
>
>> (1) The particular obligation or real estate security interest;
>>
>> (2) The nature of the default claimed;

Act 6 also provides that:

> no residential mortgage lender shall contract for or receive attorney's fees from a
> residential mortgage debtor except as follows:
>
> .   .   .
>
>> (2) **Upon commencement of foreclosure or other legal action** with
>> respect to a residential mortgage, attorney's fees which are **reasonable
>> and actually incurred** by the residential mortgage lender may be charged
>> to the residential mortgage debtor.
>>
>> (3) **Prior to commencement of foreclosure** or other legal action
>> attorneys' fees which are reasonable and actually incurred **not in excess of
>> fifty dollars ($50)** provided that **no attorneys' fees may be charged for
>> legal expenses incurred prior to or during the thirty-day notice period**
>> provided in section 403 of this act.

41 P.S. §406 (emphasis added).

In Count V, the Debtor seeks the disallowance of the legal expenses M&T asserted in the

Proof of Claim on the ground that the 2012 Fourth Foreclosure was not preceded by a pre-

foreclosure notice that complied with the requirements of Act 6.  Therefore, according to the

Debtor, the legal fees cannot exceed $50.00. [22]

---

(3) The right of the debtor to cure the default as provided in section 404 of this
act and exactly what performance including what sum of money, if any, must be
tendered to cure the default;

(4) The time within which the debtor must cure the default;

(5) The method or methods by which the debtor's ownership or possession of the
real estate may be terminated; and

(6) The right of the debtor, if any, to transfer the real estate to another person
subject to the security interest or to refinance the obligation and of the
transferee's right, if any, to cure the default.

41 P.S. §403.

[22]    I note that Count V likely is an alternative claim to that asserted in Count IV, i.e., it does not
appear that successful prosecution of Count V will add to any recovery the Debtor might obtain through
Count IV.                                                                *[cont.]*

**B.  M&T's Request for Dismissal on the Ground that Act 6 Is Inapplicable**

M&T argues that Act 6 is inapplicable because the subject Mortgage is not a "residential mortgage" within the meaning of the statute and, therefore, not subject to the statutory pre-foreclosure notice requirements.[23]

The protective provisions of 41 P.S. §§ 403 and 406 are limited to statutorily defined "residential mortgages."[24]  At the time M&T's predecessor entered into the mortgage transaction with Kevin Faulkner, Act 6 defined "residential mortgage" as "an obligation to pay a sum of money in an original bona fide principal amount of fifty thousand dollars ($50,000) or less, evidenced by a security document and secured by a lien upon property located in this Commonwealth." 41 P.S. §101 (as amended April 6, 1979, effective until September 7, 2008).

The original parties to the underlying loan transaction entered into the Mortgage in 1994.

---

*[cont.]*

  If the 2003 Judgment remains in effect, as I have concluded, the subsequent foreclosure actions have no legal consequence; any claim for legal expenses incurred after the entry of the 2003 Judgment that are included in M&T's proof of claim would have to derive from a provision of the Mortgage that survived merger into the judgment.  See Cohen-Harvin, 571 B.R. at 675, 679.  Thus, once the judgment was entered, it would appear that while legal expenses incurred in attempting to execute on the 2003 Judgment would be allowable, Act 6 compliance in subsequent foreclosure actions would not be relevant and the legal expenses incurred in those actions would not be allowable.

  However, this adversary proceeding is still in the early stages.  The Debtor is entitled to develop her case with respect to any valid, alternative legal theories for recovery.  However, if multiple claims allow for the award of the same damages, the Debtor will be limited to a single recovery.  These concerns may apply to other Counts in the Amended Complaint as well.  When it is time to render a dispositive ruling, I will determine how many claims it is necessary to adjudicate.

[23]  M&T's argument is based solely in the asserted limited scope of Act 6.  In its submission, M&T does not challenge, at this time, the merits of the Debtor's assertion that it violated the notice provision of Act 6, 41 P.S. §403(a).

[24]  Both 41 P.S. §403(a) and §406 prescribe the conduct of a "residential mortgage lender."  That term is defined as "person who lends money or extends or grants credit and obtains a **residential mortgage**." 41 P.S. §101 (emphasis added).

The original principal amount on the face of the Mortgage was $53,900.00.  Thus, M&T argues

that, in 1994, the Mortgage was not an Act 6 "residential mortgage."

In 2008, the Pennsylvania Legislature amended 41 P.S. §101, increasing the statutory

ceiling from $50,000.00 to $217,873.00.  See Act 2008-57 (effective Sept. 8, 2008), 2008 Pa.

Legis. Serv. Act 2008-57 (West 2018).

M&T contends that Act 6 does not apply to the Mortgage because the increased threshold

does not apply to mortgages entered into prior to the effective date of the 2008 amendment.

As explained below, I conclude otherwise.  The pre-foreclosure notice provision of Act 6,

41 P.S. §403, applies to the Mortgage.  If M&T failed to comply with §403, its right to collect

from the Debtor all of the legal expenses it has incurred may be adversely affected.

Consequently, the Motion will be denied as to Count V.


### C.  Discussion

### 1.

As stated earlier, Act 6 is also known as Pennsylvania's Loan Interest and Protection

Law.  See Bayview Loan Servicing, LLC v. Lindsay, 185 A.3d 307, 308 (Pa. 2018).  The statute

serves several purposes.  One is to set maximum interest rates.  See 41 P.S. §§ 201, 301-303.

Another is to regulate the mortgage foreclosure process in order to provide protections to help

homeowners avoid the foreclosure and loss of their homes.  See, e.g. Ayers v. Philadelphia Hous.

Auth., 908 F.2d 1184, 1187 (3d Cir. 1990); Wells Fargo Bank N.A. v. Spivak, 104 A.3d 7, 16

(Pa. Super. Ct. 2014).

The interest rate limitation in Act 6 may be characterized as a substantive limitation on

the rights of parties entering into a contract.  By comparison, the notice provisions of Act 6

36

merely regulate the foreclosure process, by "postpon[ing] the exercise of [the mortgagee's] right to accelerate until after the mortgagor had received notice of and opportunity to cure a default." Johnson v. Phelan Hallinan & Schmieg, LLP, 2018 WL 2452003, at *7 (Pa. Super. Ct. June 1, 2018).

Act 6 amendments may not retroactively regulate substantive conduct of the parties (e.g., the content of contract terms or interest rates) whose transactions were not subject to Act 6 coverage at the time the parties entered into them. However, Act 6 amendments may impose new procedural requirements in the foreclosure process on creditors whose contracts were not initially governed by Act 6. As a general proposition, "while procedural laws may be applied retroactively, laws that affect the substantive rights of contracting parties may not." Johnson, 2018 WL 2452003, at *7; see also First Nat. Bank of Pennsylvania v. Flanagan, 528 A.2d 134, 137-38 (Pa. 1987).

Since the effective date of the 2008 amendment raising the statutory ceiling from $50,000.00 to $217,873.00, (thereby increasing the scope of Act 6's coverage), there have been several reported decisions that have stated or held that the amendment and the increased Act 6 coverage do not apply to mortgage transactions entered into before the effective date of the amendment. These decisions must be understood in context and should not be read over broadly.

All of those cases involved claims for damages based on asserted violations of Act 6 provisions regulating substantive conduct: i.e., assertions that the rate of interest exceeded the limitations in Act or that the lender charged or collected charges in excess of that permitted by the statute. See Trunzo v. Citi Mortg., 43 F. Supp. 3d 517, 536–37 (W.D. Pa. 2014); Johnson, 2018 WL 2452003, at *7; accord Murphy v. Bank of Am., N.A., 2016 WL 1020969, at *5 (E.D.

Pa. Mar. 14, 2016); see also Sayre v. Customers Bank, 2017 WL 2439551, at *8 n.7 (E.D. Pa.

June 6, 2017) (dictum); In re Butko, 584 B.R. 97, 103 n.47 (Bankr. W.D. Pa. 2018).

In other words, in the cited cases, the claims were based on Act 6 substantive, regulatory

provisions that were not applicable to the contracts at the time the parties entered into them.

Here, the Debtor's claim is grounded in 41 P.S. §403(a), an Act 6 provisions that regulates

foreclosure procedure, not the substantive terms of the Note and Mortgage. Consequently, all of

the cited cases are distinguishable and do not support M&T's request for dismissal of the

Debtor's Count V claim.

As far back as 1978, the Pennsylvania Superior Court held that the notice provisions of

Act 6 apply to mortgages that were executed prior to the statute's effective date, but that later

became subject to Act 6 based on the definition of "residential mortgage" under the statute.

Ministers & Missionaries Ben. Bd. of Am. Baptist Churches v. Goldsworthy, 385 A.2d 358 (Pa.

Super. Ct. 1978).  There is no reason to believe that when the Pennsylvania Legislature increased

the scope of Act 6's coverage, it had any less of a consumer protective purpose in 2008 than it

did in 1974.  Therefore, I am convinced that 41 P.S. §403(a) is intended to apply to any

foreclosure of a mortgage that falls within the current definition of "residential mortgage" in 41

P.S. §101.

On the strength of Goldsworthy, I hold that 41 P.S. §403(a) applies to the Mortgage in

this adversary proceeding.


**2.**

The conclusion that 41 P.S. §403(a) applies to M&T's foreclosure efforts after the

effective date of the 2008 amendment to Act 6 does not end the inquiry.

38

The Debtor invokes 41 P.S. §406 in order to translate the asserted violation of her notice rights into a monetary benefit and reduce M&T's allowed secured claim.   As stated earlier, §406 restricts the amount of attorney's fees that a mortgagor can charge, depending upon whether the mortgagor has sent the statutory notice of intent to foreclose or has actually commenced a foreclosure proceeding.

It is not clear whether §406 may be applied to a mortgage that was not a "residential mortgage" under Act 6 when executed based on the enactment of the 2008 amendment to Act 6. Unlike §403(a), which merely adds a procedural step in the foreclosure process and does not affect a mortgagor's substantive rights, §406(a) potentially alters the substantive terms of a residential mortgage that includes a fee-shifting provision.[25]

---

[25]     For example, in the period between the conclusion of the 30 day cure period provided by 41 P.S. §403(c)(3), the mortgagor is limited to $50.00 in legal fees, see 41 P.S. §406(3), an amount that has not been modified since Act 6 was enacted in 1974.  Certainly, after the 30 day cure period has expired, but before the actual filing of a foreclosure action, a mortgagee may retain counsel who may prepare a foreclosure complaint and charge attorney's fees in excess of $50.00.  In 2018, that seems reasonable.  To the extent that §406 limits the mortgagee's right to pass that expense on to the mortgagor, it arguably purports to modify retroactively the mortgagee's substantive contract rights.

I am aware that this issue likely is short-lived.  The attorney's fees provisions of Act 6 have been modified by the enactment of 68 Pa. C.S. §2311, effective on December 21, 2018.  See 2018 Pa. Legis. Serv. Act 2018-32.  When this statute takes effect, 68 P.S. §2311(b) modifies 41 Pa. C.S. §406 with respect to the shifting of attorney's fees incurred before the commencement of foreclosure.

68 Pa. C.S. §2311(b)(2) will continue prior law in providing that "[n]o attorney fees may be charged for legal expenses incurred for a residential mortgage prior to or during the 30-day notice period provided under section 406 of the Loan Interest and Protection Law."  However, after the expiration of that 30-day time period:

(1) Except as provided in paragraph (2), prior to the commencement of foreclosure or other legal action with respect to a residential mortgage that is subject to the limits on attorney fees provided under section 406 of the Loan Interest and Protection Law, attorney fees that are reasonable and actually incurred not in excess of 0.1% of the amount of the then existing base figure as defined in section 101 of the Loan Interest and Protection Law may be charged to the residential mortgage debtor.

That said, it is unnecessary further to explore this question in the context of the Motion

requesting dismissal of Count V.  Even without the invocation of 41 P.S. §406, Count V states a

claim for relief because the issue in this case does not concern the $50.00 attorney's fee

limitation in §406.  Rather, the question is whether the entirety of the legal expenses incurred

should be shifted to M&T.

Paragraph 17 of the Mortgage provides:

> If Lender requires immediate payment in full under Paragraph 9, Lender may
> foreclose this Security Instrument by judicial proceeding.  Lender shall be
> entitled to **collect all expenses incurred in pursuing the remedies provided in
> this Paragraph 17, including but not limited to attorney's fees** and cost of title
> evidence to the extent permitted by applicable law.

(emphasis added).

Under Pennsylvania common law, M&T is entitled only to "reasonable" attorney's fees

incurred in pursuing its foreclosure remedy.  In other words, the "reasonable and actually

incurred" requirement for shifting legal fees in mortgage foreclosure cases has been a part of

Pennsylvania jurisprudence even before the enactment of Act 6.  See In re Gordon-Brown, 340

B.R. 751, 755 n.6 (Bankr. E.D. Pa. 2006) (citing Lindley v. Ross, 137 Pa. 20 A. 944 (Pa. 1890);

Jarvis v. Stoffal, 54 Pa.Super. 362 (1913)).  The "reasonableness" requirement exists, even

though the Mortgage does not use the word.  See McMullen v. Kutz, 925 A.2d 832, 834–35 (Pa.

Super. Ct. 2007) (court will read this reasonableness requirement into a contract with an

attorneys' fees provision that lacks an explicit directive that such fees be reasonable).

Thus, the Debtor may be able to prevail in reducing M&T's allowed claim on the theory

that the Mortgage itself does not authorize the attorney's fees included in the proof of claim

because the fees are not reasonable; and the fees were not reasonable because they were incurred

in connection with legal proceedings that were deficient from the beginning due to M&T's

failure to comply with the notice provisions of Act 6.

Consequently, if M&T did not comply with the notice requirements of 41 P.S. §403(a),

Count V states a plausible claim for disallowance of at least some of the attorney's fees

component of M&T's proof of claim.[26]  Considering that M&T has not yet challenged the

Debtor's position with respect to the propriety of its conduct under §403(a), the Motion must be

denied as to Count V.[27]

---

[26]     I note that the Debtor also seeks an award of attorney's fees in Count V pursuant to 41 P.S. §503.
That section permits a borrower who "prevails in an action arising under this act" to recover reasonable
attorney's fees.  It is not limited to a transactions involving a "residential mortgage."  However, it is
doubtful that an objection to a proof of claim constitutes "an action arising under" Act 6, see In re Sellers,
555 B.R. 479 (Bankr. E.D. Pa. 2016); see also Bayview Loan Servicing, LLC v. Lindsay, 185 A.3d 307,
309 (Pa. 2018) (a successful defense to a mortgage foreclosure action is not an "action" for purposes of
41 P.S. §503), and it is doubtful that raising a claims objection by means of adversary complaint changes
its defensive nature.  However, because this issue involves only scope of the remedy the Debtor seeks,
and not viability of Count V itself, I need not decide whether the claim for relief under §503 should be
dismissed at this time.

[27]     There is an alternative ground for denial of the Motion as to Count V.

As the Debtor plausibly points out in her Memorandum, the $53,900 principal amount on the face
of the Mortgage likely includes title and broker fees, points and other charges which cannot be part of the
bona fide principal for purposes of applying the definition of "residential mortgage" in 41 P.S. §101.  See
General Electric Credit Corporation v. Slawek, 269 Pa.Super. 171, 409 A.2d 420 (1979) (en banc); In re
Harris-Pena, 446 B.R. 178, 187 (Bankr. E.D. Pa. 2009).  If those charges are subtracted from the
$53,900.00, the mortgage may fall within the pre-2008 definition of "residential mortgage."  Thus,
determining whether the Mortgage is a "residential mortgage" under Act 6's original definition is a fact
issue that cannot be decided at the Rule 12(b)(6) stage of the case.

# IX. COUNT VI: BREACH OF CONTRACT

## A. Introduction

In Count VI, based on Paragraph 9(d) of the Mortgage, which she claims incorporates into the contract certain regulations of the U.S. Department of Housing and Urban Development ("HUD"), the Debtor asserts a claim against M&T for breach of contract.

Paragraph 9 the Mortgage provides:

### 9. Grounds for Acceleration of Debt
.  .  .

> (d) **Regulations of HUD Secretary**. In many circumstances, regulations issued by the Secretary will limit Lender's rights in the case of payment default to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary

In the Amended Complaint, the Debtor cites the following regulations as having been violated: 24 C.F.R. §203.556(b), (d), (e); §203.604(b); and §203.606(a).

Without citing any specific legal authority, the Debtor also asserts that she had been eligible for a loan modification under the Federal Housing Administration's Home Affordable Modification Program ("HAMP") and that she was eligible and entitled to a "Special Forbearance" under 24 C.F.R . 203.614 (Am. Compl. ¶¶148-50). She seeks damages and partial disallowance of M&T's proof of claim.

M&T moves to dismiss Count VI on the ground that the claim is barred by the <u>Rooker-Feldman</u> doctrine. If not barred by <u>Rooker-Feldman</u>, M&T contends that the breach of contract claim should be dismissed because the Debtor is not a party to the Mortgage (or the Note).

As explained below, while I conclude that <u>Rooker-Feldman</u> does not impact the bankruptcy court's jurisdiction to consider Count VI, I agree with M&T that the Debtor's affirmative damages claim for breach of contract must be dismissed – albeit for reasons other

than those offered by M&T.  Nevertheless, to the extent that HUD regulations governing the foreclosure process may have been violated, Count VI will survive insofar as the violations may provide grounds for a partial disallowance of M&T's allowed secured claim.[28]

## B. Rooker-Feldman

In her Answer to M&T's complaint in the 2012 Fourth Foreclosure, the Debtor asserted a counterclaim for breach of contract, raising essentially the same claim as she sets out in Count VI.  However, on July 19, 2016, the state court entered an order ("the July 19th Order") granting M&T's motion for partial judgment on the pleadings and dismissing the Debtor's breach of contract claim "with prejudice."  (Ex. K to M&T's Mem.).

M&T asserts that the dismissal with prejudice of the Debtor's counterclaim in the 2012 Fourth Foreclosure bars this court from considering Count VI under the Rooker-Feldman doctrine.

Respectfully, I disagree.[29]

Initially, I observe that I agree with M&T that, on its face, the July 19th Order appears to be a dismissal of the Debtor's counterclaim for breach of contract on the merits. Unquestionably, M&T stated several non-merits, procedural grounds in requesting dismissal of

---

[28]    I note that this is another claim which appears substantially to overlap with and may be swallowed whole by Count IV of the Amended Complaint.

[29]    Consideration of  the Rooker-Feldman issue is necessary in order to determine the existence of subject matter jurisdiction before reaching the merits of a claim.  See, e.g., Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998); In re Mullarkey, 536 F.3d 215, 220–21 (3d Cir. 2008).

the counterclaim.  (See Ex. P to M&T's Mem.).[30]  But M&T also asserted that the counterclaim

failed to state a claim on which relief can be granted (largely for the same reasons asserted in this

adversary proceeding).

The state court had both non-merits and merits grounds to choose from in deciding

M&T's motion for judgment on the pleadings.  Had the state court concluded that the breach of

contract claim was merely procedurally defective and impermissible in a mortgage foreclosure

action, it is fair to conclude that it would have omitted the words "with prejudice" from the

dismissal order.  The only reasonable inference to be drawn from the text of the order was that

the court concluded that the counterclaim was properly raised in the action, but lacked merit.

Consequently, it is not surprising that M&T seeks dismissal based on the state court's

order.  The Defendant litigated the validity of the contract claim on the merits in state court; it

prevailed, and the Debtor is now raising the same issue in this adversary proceeding.  At first

blush, it appears possible that some kind of preclusion doctrine might apply.  However, Rooker-

Feldman is not applicable every time an issue has been previously decided by a state court.  The

facts here highlight the exceedingly narrow nature of the Rooker-Feldman doctrine.

M&T's Rooker-Feldman argument fails for one of the same reasons that the Debtor's

Rooker-Feldman argument failed in connection with Count II.  See Part V., supra.  M&T cannot

satisfy the second requirement of the doctrine: i.e., that the federal lawsuit complains of injuries

caused by the prior state-court judgment.  As stated earlier, when a federal plaintiff asserts an

injury caused by the defendant prior to the entry of the state court judgment, Rooker-Feldman is

inapplicable.  See n.6, supra.

---

[30]     M&T asserted, inter alia, that under Pa. R. Civ. P. 1141(a), a counterclaim seeking an in
personam judgment in a de terris action in mortgage foreclosure is impermissible and that the Debtor's
counterclaim did not arise from the same transaction or occurrence as M&T's mortgage foreclosure
claim, as required by Pa. R. Civ. P. 1148.

In Count VI, the Debtor asserts that she suffered damages caused by M&T's conduct, all of which pre-date the state court order dismissing her breach of contract claim. The Debtor is not complaining of harm caused by the state court dismissal order; she complains of harm caused by M&T's earlier conduct. Rooker-Feldman does not apply.[31]

## C. Failure to State a Claim

### 1.

The thrust of the Debtor's contract claim is that certain provisions of the Mortgage incorporated federal regulations imposing certain limitations on M&T's right to foreclose and that M&T breached the mortgage contract by failing to perform those obligations before attempting to foreclose.

In their competing memoranda, the parties engage in a spirited debate as to whether the Debtor, as a transferee who took title to the Property subject to the Mortgage, may assert claims for breach of M&T's duties under the Mortgage.

M&T contends that as a transferee who is not a party to the Mortgage, who has not assumed it, but who is merely the owner of property that is subject to it, the Debtor does not step into the shoes of the original mortgagor and may not sue M&T for the purported contract violations. See generally Dunkin' Donuts Franchised Restaurants, LLC v. Claudia I, LLC, 2013 WL 3716525, at *3 (E.D. Pa. July 15, 2013) ("In general, a person must be in privity of contract to sue for damages for breach of such contract"); accord Poskin v. TD Banknorth, N.A., 687 F.

---

[31]    In light of the state court order dismissing the Debtor's contract counterclaim "with prejudice," there is an obvious question whether Count VI is subject to either issue or claim preclusion. However, M&T did not raise the question and I express no opinion regarding the applicability of either doctrine. Given my disposition of the Motion as to Count VI, there will be no need to address the issue later.

Supp. 2d 530, 543 (W.D. Pa. 2009) ("A person who is not a party to a contract does not have standing to assert rights under the contract").[32]

The Debtor argues that her ownership of the Property and the legal effect of a federal regulation creates a sufficient relationship to the Mortgage to put her in contractual privity with M&T. See 24 C.F.R. §203.251(e) (defining "Mortgagor" as including "assigns").

Neither side cites any cases directly on point regarding the issue; perhaps there are none. That may be so because the notion that a mortgagor has a right to sue a mortgagee for breach of the mortgagee's performance under the mortgage is more novel than the parties assume.

Both parties appear to assume that the limitations on M&T's right to foreclose on the Mortgage following a default that is expressed in the Mortgage (or incorporated by reference to federal regulations) constitutes an affirmative, contractual promise that, if not performed, may be the subject of an action for breach of contract. As explained below, I conclude, as a matter of law, that the Mortgage creates no such actionable promise.

## 2.

Under basic principles of contract law, there is a critical distinction between a contractual condition and a contractual promise:

> [A] condition is an event, not certain to occur, which must occur before performance under a contract becomes due. Whether words constitute a condition or a promise is a matter of the intention of the parties to be ascertained from a reasonable construction of the language used, considered in light of the surrounding circumstances. **Where words in a contract raise no duty in and of themselves but rather modify or limit the promisees' right to enforce the promise such words are considered to be a condition**.

---

[32]     The general principle stated in the text is subject to exceptions. An agency or a third party beneficiary relationship may be sufficient to confer standing on a non-party to a contract. See, e.g., Republic Servs. of Pennsylvania, LLC v. Caribbean Operators, LLC, 301 F. Supp. 3d 468, 476 (E.D. Pa. 2018) (third party beneficiary); Zeno v. Ford Motor Co., 238 F.R.D. 173, 192–93 (W.D. Pa. 2006).

> Whether a provision in a contract is a promise or a condition is significant in its legal effect. **The non-occurrence or failure of a condition is not a breach** by a party unless he is under a duty that the condition occur." Columbia Gas Sys., 50 F.3d at 241 (emphasis added). Thus, **if a condition fails to occur, there is no breach of contract that subjects the non-performing party to damages** **unless there was an independent promise to perform the condition**. Id.

In re Green Goblin, Inc., 470 B.R. 739, 756 (Bankr. E.D. Pa. 2012) (quotations and citations omitted), aff'd, 2014 WL 5800601 (E.D. Pa. Nov. 6, 2014).

Applying those principles here, I fail to see how M&T (or its predecessor) made any contractual "promises" to the Debtor (or her predecessor).

The Note is a negotiable instrument, which is an unconditional promise to pay a fixed amount of money.  See 13 Pa. C.S. §3104(a).  The payment obligation embodied in the Note is secured by the Mortgage.  Upon a default of the Note, one remedy available to M&T is foreclosure on the Mortgage.  That right to foreclose is restricted by certain preconditions, such as the obligation to consider various forbearance or loan modification alternatives to foreclosure, to the extent required by the federal regulations; the right to foreclose also is subject to the requirement that the mortgagee provide the mortgagor with the pre-foreclosure notices required by Pennsylvania law, including Act 6.

When properly viewed, these provisions of the Mortgage are not affirmative promises that the mortgagee will perform any duties.  Rather, the Mortgage provides that the right to foreclose is **conditioned** on certain events and actions occurring before foreclosure proceedings are initiated.

At bottom, the Debtor has alleged nothing more than that certain conditions to foreclosure did not occur before M&T commenced and pursued its foreclosure remedy.  If true, the non-occurrence of those conditions establishes a defense to foreclosure, but does not support an affirmative claim for breach of contract.

For this reason, I will grant the Motion as to Count VI insofar as it states a claim for affirmative damages for breach of contract.

### 3.

The determination that the Debtor may not seek affirmative contract damages for breach of contract does not conclude the matter.  Throughout the Amended Complaint, the Debtor asserts that her claims constitute both affirmative damage claims and an objection to M&T's proof of claim.  That is equally true with respect to Count VI.

The facts alleged in Count VI, if proven, support an objection to M&T's Proof of Claim on the ground that M&T engaged in foreclosure activity without first satisfying contractual pre-conditions and therefore, its claim for various legal expenses incurred during the foreclosure process should be disallowed.  To the extent that the claimed reduction in the allowed secured claim does not overlap the Count IV remedy, the Debtor is entitled to pursue this remedy.  To this extent, the Motion will be denied as to Count VI.

## X.  Count VII: Unfair Trade Practices

In Count VII, the Debtor asserts a claim for violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("the UTPCPL"), 73 P.S. §§ 201-1 et seq.

The UTPCPL declares unlawful "unfair methods of competition and unfair or deceptive acts in the conduct of any trade or commerce."  73 P.S. §201-3.  The UTPCPL defines "unfair methods of competition and unfair or deceptive acts as any one (1) of twenty (20) specific practices, plus a catch-all provision.  73 P.S. §201-2(4).  The catch-all provision defines unfair methods of competition and unfair or deceptive acts as "Engaging in any other fraudulent or

deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S.

§201-2(4)(xxi).

The UTPCPL creates a private right of action for recovery of actual damages, plus

discretionary treble damages, for any person who "suffers any ascertainable loss of money or

property, real or personal, as a result of the use or employment by any person of a method, act or

practice declared unlawful" under the UTPCPL. 73 P.S. §201-9.2.

To establish liability under the catch-all provision, a plaintiff must present evidence

showing: (1) a deceptive act that is likely to deceive a consumer acting reasonably under similar

circumstances, (2) justifiable reliance, and (3) an ascertainable loss of money or property caused

by defendant's actions. See Hall v. Equifax Info. Servs. LLC, 204 F. Supp. 3d 807, 810–11

(E.D. Pa. 2016); Slapikas v. First American Title Ins. Co., 298 F.R.D. 285 (W.D. Pa. 2014); see

also Kaymark v. Bank of Am., N.A., 783 F.3d 168, 180 (3d Cir. 2015) (stating the same

elements in a slightly different fashion); In re Partners Grp. Fin., LLC, 394 B.R. 68, 83–84

(Bankr. E.D. Pa. 2008) (same).


## A. Preemption

Initially, M&T argues that Count VII should be dismissed because the UTPCPL is

preempted by the Bankruptcy Code. I reject this argument out of hand.

 Federal preemption should not be inferred lightly, and only applies when Congress either

makes preemption explicit in a statute, where federal law occupies the entire field or state law

actually conflicts with federal law. See, e.g., Dougherty v. Wells Fargo Home Loans, Inc., 425

F.Supp.2d 599, 608 (E.D. Pa. 2006) (citations omitted). Courts have found UTPCPL claims are

preempted by the Code, but only when the deceptive conduct alleged also constitutes a violation

of the Bankruptcy Code.  See In re Abramson, 313 B.R. 195, 198 (W.D. Pa. 2004); accord In re

Brundage, 2005 WL 2206076 (E.D. Pa. Sep. 9, 2006).

A UPTCPL claim is not preempted simply because it is included in an adversary

proceeding.  Dougherty, 425 F.Supp.2d at 608.  Nothing in this count involves the Bankruptcy

Code.  All of the conduct at issue occurred before this bankruptcy and involves loan

modifications and other loss-mitigation options that have nothing to do with Code-based

mechanisms.  This count is not preempted.


## B.    Failure to Allege Necessary Elements of UTPCPL Claim

Next, M&T argues that the Debtor has not stated a claim because the Amended

Complaint lacks an allegation that M&T committed any unfair or deceptive practices or an

allegation of an ascertainable loss of money.  I disagree.

According to the Amended Complaint, M&T did not advise the Debtor of the availability

of HAMP, partial claims, and other loss mitigation techniques.  Instead, M&T demanded certain

payments in order to qualify the Debtor for a special forbearance for which she was already

eligible.  (Am. Compl. ¶¶ 151, 192).  Because the Debtor was qualified, the Debtor asserts that

M&T had no right to make a demand for payments in order to make such a determination.

The Debtor did indeed make some payments in reliance upon M&T's special forbearance

demands.  (Am. Compl. ¶193).  The payment demands and factual omissions in the

communications were likely made to deceive a reasonable borrower.  As a result, interest, fees

and charges continued to accumulate when the special forbearance should have paused some or

all of them.  M&T then applied payments made by the Debtor, totaling between $21,000.00 and

$22,000.00, to various fees and charges which were inflated and uncollectable.  (Am. Compl.

¶203).

　　　If these facts are proven, the Debtor can satisfy all three (3) elements of her UTPCPL

claim: a deceptive act, reliance on the representations made to her, and an ascertainable loss of

money due to the misapplication of payments actually made.  In reaching this conclusion, I join

other courts in this jurisdiction holding that that deceptive conduct in servicing a mortgage that

caused a borrower to make payments states a UTPCPL claim.[33]

　　　Count VII will not be dismissed.


# XI. Count VIII: FDCPA

　　　The Debtor alleges that M&T violated the federal Fair Debt Collection Practices Act, 15

U.S.C. §§ 1692 et seq. ("FDCPA").

　　　In Count VIII, the Debtor alleges generally that "[a]s a result of [M&T's] unfair debt

collection practices," the Debtor paid $21,000.00 to $22,000.00 "that were not properly applied

to reduce her debt."  (Am. Compl. ¶ 206)  The only factual underpinning for the claim set forth

in the pleading is in Paragraph 207, which suggests that, in light of the 2003 Judgment (and the

---

[33]　　See Sayre, 2017 WL 2439551, at *8–9; Adams v. Wells Fargo Bank, N.A., 2017 WL 1355421, at *4 (E.D. Pa. Apr. 13, 2017); Ali v. Ocwen Loan Servicing, Inc., 2017 WL 1163924, at *4–5 (E.D. Pa. Mar. 29, 2017); Cave v. Saxon Mortg. Servs., Inc., 2012 WL 1957588, at *10 (E.D. Pa. May 30, 2012); see also Prince v. BAC Home Loans Servicing, L.P.,  2017 WL 4466473, at *4 (E.D. Pa. Aug. 8, 2017).

dismissal of the 2008 Second Foreclosure), M&T has been attempting to collect a debt which it "knows" is not owed and is not subject to collection. [34]

The FDCPA was enacted "in order to eliminate abusive debt collection practices, which contribute to the number of personal bankruptcies, marital instability, loss of employment, and invasions of privacy." Caprio v. Healthcare Revenue Recovery Grp., LLC, 709 F.3d 142, 148 (3d Cir. 2013).

In 15 U.S.C. §1692f, Congress has identified eight (8) types of conduct that constitute actionable, unfair means to collect or attempt to collect a debt, including, "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. §1692f(1). 15 U.S.C. 1692k creates a private right of action against a "debt collector" who violates a provision of the FDCPA for actual damages and "additional damage" up to $1,000.00.

The FDCPA defines "debt collector" as follows, in pertinent part:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business **the principal purpose of which is the collection of any debts**, or **who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another**. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. . . . .

15 U.S.C. §1692a(6).

---

[34]     I am aware that Count VIII also incorporates paragraphs 1-203 of the Amended Complaint, so theoretically, one might be able to rummage through the prior forty-five (45) pages of the pleading and collect factual allegations that might clarify the basis of this claim. But that would be unreasonable. In her memorandum in opposition to the Motion, the Debtor (belatedly) identified twenty-four (24) earlier paragraphs of the Amended Complaint that purport to describe the alleged unlawful collection actions. The cited paragraphs refer to the monetary demands that M&T made despite the legal consequences of the 2003 Judgment and the asserted Act 6 notice violations.

Under this definition, there are "two possible paths" to determine an entity is a debt collector: (1) if the principal purpose of the business is the collection of debts **or** (2) the business regularly collects or attempts to collect the debts of another.  Tepper v. Amos Fin'l, LLC, 2017 WL 3446886 (E.D. Pa. Aug. 11, 2017), aff'd, 898 F.3d 364 (3d Cir. 2018).

In Henson v. Santander Consumer USA Inc., 137 S. Ct. 1718 (2017), the Supreme Court examined the second path and held that, notwithstanding the text of 15 U.S.C. §1692a(6)(F)(iii), an entity that regularly purchased debts originated by someone else and then sought to collect those debts for their own account is not a "debt collector" simply because the debts were in default when purchased. [35]

In this adversary proceeding the parties have focused exclusively on the second definitional path described above.

---

[35]     15 U.S.C. §1692a(6)(F) excludes from the definition of debt collector:

> **any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity** (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; **(iii) concerns a debt which was not in default at the time it was obtained by such person**; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor

(emphasis added).  By negative implication many courts construed this provision to mean that entities that purchase debts already in default and then collect them for their own benefit are "debt collectors."  E.g., McKinney v. Cadleway Properties, Inc., 548 F.3d 496, 501–02 (7th Cir. 2008); Pollice v. Nat'l Tax Funding, L.P., 225 F.3d 379, 403–04 (3d Cir. 2000).  Henson held otherwise.

In Tepper v. Amos Fin'l, LLC, 2017 WL 3446886 (Bankr. E.D. Pa. Aug. 11, 2017), the district court examined the statutory definition pointed out that there are "two possible paths" to being a debt collector: (1) if the principal purpose  of the business is the collection of debts **or** (2) the business regularly collects or attempts to collect the debts of another.   Id. at *5.  After observing that Henson involved only the second definitional path, the court held that a business whose sole purpose was to purchase delinquent debt and collect it on its own behalf was a debt collector because it fit the first definitional path.  Recently, the Court of Appeals has affirmed that holding.   Tepper, 898 F.3d 364.

Relying on <u>Henson</u>, M&T argues that, as a matter of law, that it is not a debt collector because it has, at all times, been collecting the debt on its own behalf and the fact that it may have been in default at the time it began its collection efforts does not make it a "debt collector."

The Debtor's response to this argument is technically correct. The Debtor points out that in Count VII, as in Count I, she asserts that M&T does not hold the Note and therefore, is not the creditor to whom the Debtor owes her debt. If so, all of M&T's collection efforts have constituted an effort to collect a debt actually owed to another, bringing M&T within the statutory definition.

As in Count I, and for the reasons stated in Part IV.B.2, <u>supra</u>, I conclude I must accept the allegations in the Amended Complaint as true and that the Motion raises a factual issue cannot be resolved under Rule 12(b)(6). A more fulsome evidentiary record is required. Consequently, the Motion will be denied as to Count VIII.

## XII.  CONCLUSION

For the reasons stated above, the Motion will granted in part and denied in part.

An appropriate order follows.

Date: <u>October 3, 2018</u>

**ERIC L. FRANK**
**U.S. BANKRUPTCY JUDGE**